WO

NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lonetta Sanders,<br><br>    Plaintiff,<br><br>vs.<br><br>City of Phoenix,<br><br>    Defendant. | No. CV-06-1644-PHX-GMS<br><br>**ORDER** |

Pending before the Court is the City of Phoenix's Motion for Summary Judgment. (Dkt. # 96.) For the following reasons, the Court grants the Motion.[1]

**BACKGROUND**

Plaintiff Lonetta Sanders ("Sanders") initiated the instant case on June 29, 2006 when she filed a Complaint alleging discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"). (Dkt. # 1.) The Complaint was subsequently

---

[1] On March 3, 2010, when she filed her Response to the City's Motion for Summary Judgment, Sanders was represented by Edmundo P. Robaina Esq. (*See* Dkt. #111.) The next day, the Court granted Mr. Robaina's Motion to Withdraw as counsel of record per Sanders's request. (Dkt. # 117.) Shortly thereafter, Sanders filed several documents to supplement the summary judgment record, which were stricken because they grossly exceeded page limitations and because they were untimely. (*See* Dkt. # 125.) Nevertheless, these supplemental filings do not alter the Court's analysis as they are premised on inadmissible hearsay and attempt to allege claims that were not raised in Sanders's EEOC discrimination charge or her Fifth Amended Complaint. (*See* Dkt. ## 118–123.)

amended to include an employment discrimination claim pursuant to 42 U.S.C. § 1981. Specifically, Sanders, an African American, claims that the Phoenix Police Department ("Phoenix Police") subjected her to a hostile work environment because the employees whom Sanders supervised yelled at her on two occasions, failed to follow her orders, spread false rumors about her, and brought EEOC complaints against her. Sanders further contends that her Caucasian and Hispanic supervisors refused to discipline these employees.

The relevant facts giving rise to Sanders's claims occurred between July 2001 and January 2003 when she worked as a lieutenant for Phoenix Police's Family Investigations Bureau (the "Bureau"). In her assignment with the Bureau, Sanders began having problems with one of her subordinates, Leonard Pinuelas ("Pinuelas"), who is Hispanic. (Dkt. # 111, Ex. 1 at ¶ 14.) According to Sanders, Pinuelas failed to follow her directives, and on two occasions in 2002, he yelled at Sanders in a manner that she perceived as threatening. (*Id.* at ¶ 16.) Sanders promptly reported these yelling incidents to her supervisors, who disciplined Pinuelas by instructing him to stop his inappropriate behavior. (*Id.* at ¶ 17.) Sanders, however, felt that more action was necessary. She therefore requested an investigation into Pinuelas's conduct and asked that he be transferred out of the Bureau. (*Id.* at ¶ 18.) While Sanders's supervisors initially contemplated a transfer, they decided to allow Pinuelas to remain in the Bureau. (*Id.* at ¶¶ 19–20.)

Thereafter, Sanders alleges that she continued to have issues with Pinuelas. Apparently, in August of 2002, Pinuelas was directed to investigate a formal complaint against a Bureau employee for making a disparaging comment about a private citizen. (*Id.* at ¶ 25.) Sanders alleges that Pinuelas failed to complete the investigation when he discovered that a Hispanic employee was the person responsible for making the comment. (*Id.* at ¶ 28.) Sanders further contends that Pinuelas failed to follow another directive in February 2003 when she requested that he investigate a Hispanic citizen that allegedly

destroyed evidence relevant to a criminal investigation.[2] (*Id.* at ¶ 31.) After Pinuelas failed to obey this directive, Sanders initiated an investigation of Pinuelas's conduct and submitted a report to her immediate supervisor. (Dkt. # 111, Ex. 1 at ¶ 40.) In her report, Sanders further requested that the Professional Standards Bureau ("PSB"), which investigates internal police misconduct, review the matter. However, Sanders's supervisor, Manny Davila, who is Hispanic, decided not to pass the matter along to the PSB. (*Id.* at ¶ 41.) Instead, noting that he shared Sanders's concerns, Davila forwarded the report to his boss, Assistant Chief Silverio Ontiveros, who is also Hispanic. (*Id.* at ¶ 42.) When Sanders learned that Davila did not forward the report to the PSB, she took the report there herself. (*Id.* at ¶ 44.) The PSB then initiated an investigation into Pinuelas's alleged failure to comply with Sanders's directives and allegations that he had been dishonest. (*Id.* at ¶ 45.) Ultimately, Pinuelas was given a six week suspension for the misconduct. (*Id.* at ¶ 47.)

Sanders alleges that Pinuelas's conduct escalated in May 2003. On May 13, one of Sanders's detectives complained that Pinuelas had mistreated her. (*Id.* at ¶ 48.) Though Sanders forwarded the complaint to Davila, no action was taken against Pinuelas for the alleged mistreatment. (*Id.* at ¶ 53.) Instead, Davila apparently decided to give Pinuelas "the benefit of the doubt." (*Id.* at ¶ 50.) Later that month, Pinuelas allegedly began spreading rumors about Sanders. (*Id.* at ¶ 54.) According to Sanders, Pinuelas began telling other employees that Sanders had made arrangements to have Sergeant Darren Viner, who is African American, transferred to the Bureau, that Sanders started a private business with Detective Garrick Ward, who is also African American, and that Sanders was marketing real estate while on duty. (*Id.* at ¶ 55.) Sanders further complains that Phoenix Police never conducted an investigation into whether Pinuelas was spreading rumors. (*Id.*)

In October of 2003, Pinuelas filed an internal complaint with the City Equal Opportunity Department, alleging that Sanders discriminated against him because he is

---

[2]According to Sanders, when she directed Pinuelas to investigate an African American, he did so. (Dkt. ## 111, Ex. 1 at ¶ 32; 129 at ¶ 32.)

- 3 -

Hispanic. (Dkt. # 111, Ex. 1 at ¶ 59.) In his complaint, Pinuelas asserted that Sanders subjected him to an unfair investigation and falsely accused him of yelling. (*Id.*) A few months later, another Bureau employee, Mary Freund, who is Caucasian, also filed a complaint against Sanders with the City Equal Opportunity Department. (*Id.* at ¶ 62.) Freund alleged that Sanders subjected her to a hostile work environment on the basis of race. (*Id.*) Shortly thereafter, Pinuelas and Freund raised the same allegations against Sanders in official complaints to the Equal Opportunity Commission ("EEOC"). (Dkt. # 97 at ¶¶ 29, 31.) Sanders contends that these discrimination complaints further contributed to the hostile work environment she suffered while employed by Phoenix Police. (*See* Dkt. # 111 at 7.)

On January 23, 2004, Pinuelas and the employees he supervised, including Freund, were removed from Sanders's supervision. (*Id.*, Ex. 1 at ¶ 61.) Around this time, Davila approached Sanders and apologized for not doing more to protect her when Pinuelas had been disrespectful. (*Id.* at ¶ 66.) Several months later, in November 2004, Sanders requested a transfer out of the Bureau. On December 28, 2004, Sanders filed an EEOC charge of discrimination against Phoenix Police, alleging that she was subjected to a hostile work environment on the basis of race. (Dkt. # 97 at ¶ 56.) She then voluntarily retired from Phoenix Police in June of 2005. (Dkt # 111, Ex. 1 at ¶ 2005.)

## LEGAL STANDARD

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party, however, need not disprove matters on which the non-moving party has the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In such cases, the burden is on the nonmoving party to establish a genuine issue of material fact. *Id.* at 322–23. The nonmoving party "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e) If it cannot do so, summary judgment will be granted. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

**DISCUSSION**

Sanders's Title VII and § 1981 claims fail as a matter of law because Sanders does not bring forth evidence upon which a reasonable jury might find that she was subjected to an objectively hostile work environment based on race. Further, even if Sanders had presented evidence of racial hostility, her Title VII claim is time barred and her § 1981 claim fails for lack of evidence that her alleged injuries resulted from a municipal policy, practice, or custom.

**I. Sanders Has Not Presented Prima Facie Evidence of a Hostile Work Environment**

The creation of a racially hostile work environment violates Title VII and § 1981's "guarantee of 'the right to work in an environment free from discriminatory intimidation, ridicule, and insult.'" *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)). "[A] workplace in which racial hostility is pervasive constitutes a form of discrimination." *Id.* To establish a prima facie case of a hostile work environment under Title VII and § 1981, a plaintiff must show (1) that he or she was subjected to verbal or physical conduct because of race, (2) that the conduct was unwelcome, and (3) that the conduct was sufficiently severe or pervasive to alter the terms and conditions of his or her employment and create an abusive work environment. *See Manatt v. Bank of Am., NA*, 339 F.3d 792, 798, 800–01 (9th Cir. 2003); *see also Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 851 (9th Cir. 2003) (noting that the legal principles applicable to Title VII claims apply with equal force to claims brought under § 1981). To determine whether the alleged discriminatory conduct is pervasive, courts consider the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. Boca Raton*, 524 U.S. 775, 787–88 (1998) (quotation omitted). A work environment is pervasive if it is "both subjectively and objectively . . . perceived as abusive." *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000) (quotation marks and citation omitted).

In this case, Sanders fails to satisfy the first prong of her prima facie case because she presents no evidence that the allegedly hostile environment at the Bureau was *based on race*. *See Manatt*, 339 F.3d at 800–01 Indeed, Sanders points to nothing in the record suggesting that Pinuelas's alleged animosity toward her was based on racial animus. Similarly, there is no evidence that Sanders's supervisors exhibited leniency toward Pinuelas based on Pinuelas's or Sanders's race. Instead, the only evidence before the Court indicates that the animosity between Sanders and Pinuelas was caused by different work styles and performance-related issues. (Dkt. # 97 at ¶ 44.)

Similarly, the mere fact that Sanders belongs to a different race than Pinuelas, Davila, and Ontiveros is insufficient, without more, to demonstrate that the alleged hostility toward Sanders was based on her race. *See, e.g.*, *Airedale v. City of Memphis*, 519 F.3d 587, 604–605 (6th Cir. 2008) (noting that the mere fact that one officer was black and another officer was white did not constitute evidence that the one mistreated the other on the basis of race); *see also Hogan v. Henderson*, 102 F. Supp.2d 1080, 1090 (D. Ariz. 2000) ("Title VII permits people to have their differences; what it prohibits is abusive treatment generated from racial animosity.") And while Sanders argues that Phoenix Police's racial animosity is demonstrated by her supervisors' alleged favoritism to Pinuelas, this argument fails because Sanders points to nothing more than isolated incidents of alleged favoritism. *See Sprinkle v. City Douglas*, 621 F. Supp.2d 1327, 1348 (S.D. Ga. 2008) (holding that isolated instances of favoritism are not sufficiently severe and pervasive to create a hostile work environment).

In addition, the record does not provide evidence that Phoenix Police's conduct was sufficiently severe or pervasive to sustain a hostile-work-environment claim. *See Manatt*, 339 F.3d at 800–01. That Sanders's subordinates yelled at her, failed to obey directives, and made false complaints against Sanders on a few occasions over the course of almost two years is insufficient to establish a hostile work environment under Title VII and § 1983. *See Vasquez v. County of L.A.*, 349 F.3d 634, 642–43 (9th Cir. 2003) (affirming summary judgment where plaintiff merely produced evidence that, over the course of a year, her employer yelled at him on two occasions, made false complaints against him, and made two disparaging remarks

about his race); *see also Sanchez v. Santa Ana*, 936 F.2d 1027, 1031, 1036 (9th Cir. 1990) (holding that no reasonable jury could have found a hostile work environment despite allegations that the employer posted a racially offensive cartoon, made racially offensive slurs, targeted Latinos when enforcing rules, provided unsafe vehicles to Latinos, did not provide adequate police backup to Latino officers, and kept illegal personnel files on plaintiffs because they were Latino). Accordingly, as in *Vasquez*, the alleged misconduct in this case is not sufficiently severe or pervasive to give rise to liability under Title VII and § 1981. *See* 349 F.3d at 642–43; *see also Faragher*, 524 U.S. at 787–88.

Moreover, while Sanders complains that her supervisors never investigated her allegation that Pinuelas was spreading rumors about her, she does not present any evidence that her immediate supervisors, Davila and Ontiveros, even knew about these allegations. And while Sanders was allegedly informed of the rumors by the PSB, she does not present any evidence that she ever asked PSB to conduct an investigation. Given that Sanders was Pinuelas's immediate supervisor at the time of the alleged rumors, she also had the power to conduct her own investigation, but apparently did not do so. (Dkt. # 129 at ¶ 56.) There is nothing in the record suggesting that Sanders's supervisors, PSB, or anyone else at Phoenix Police prevented or deterred her from going forward with an investigation into Pinuelas's allegedly false rumors.

The Court also rejects Sanders's argument that she was subjected to a hostile work environment when Phoenix Police failed to prevent her subordinates from bringing complaints of discrimination against her. While Sanders alleges that at least two of her subordinates brought EEOC complaints against her, she does not explain how these complaints contributed to a hostile work environment. She also does not present any evidence that her supervisors directed or encouraged employees to bring meritless discrimination complaints, and the record is devoid of evidence suggesting that these complaints were so severe and pervasive that an objectively reasonable employee in Sanders's position would have perceived them to create a hostile work environment. Moreover, to the extent Sanders suggests that Phoenix Police was required to prevent these

1 employees from bringing discrimination complaints, the Court disagrees. As the Supreme
2 Court has held, employers are prohibited from taking "actions that are likely to deter
3 discrimination victims from complaining to the EEOC, the courts, and employers." *Cf.*
4 *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006) (holding that the Title
5 VII's retaliation provision was passed to prevent "employer interference" with an employee's
6 right to "'unfettered access' to Title VII's remedial mechanisms") (citation omitted).
7 Accordingly, Phoenix Police's failure to prevent Sanders's subordinates from pursuing
8 complaints with the EEOC does not constitute evidence that Sanders was subjected to a
9 hostile work environment.

## II. Sanders's Title VII Claim Is Time-Barred.

Even if Sanders had presented prima facie evidence of a hostile work environment at Phoenix Police, her Title VII claim would still fail because it is time-barred. To pursue a Title VII claim, an individual has 300 days from the date of the discriminatory act to file a charge with the EEOC. *See* 42 U.S.C. § 2000e-5(e). Absent a continuing violation, all discriminatory acts that are alleged to have occurred more than 300 days prior to the EEOC filing are time-barred. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002). Additionally, a plaintiff carries the burden of proving that acts occurring prior to the 300-day limitations period are part of a continuing violation out of which the timely filed incidents arose. *See Sandoval v. Saticoy Lemon Ass'n*, 747 F. Supp. 1373, 1389 (C.D. Cal. 1990) (citation omitted).

Sanders filed her EEOC charge on December 28, 2004; therefore, absent a continuing violation, all alleged incidents which occurred before March 3, 2004 are barred by the 300-day limitations period. Accordingly, because the allegedly hostile interaction with Pinuelas, Davila, and Ontiveros occurred before that date, Sanders's claims are barred. Sanders, however, points to two events occurring after March 3, 2004, which she argues are related to a continuing practice of discrimination. Neither event, however, tolls the 300-day limitations period.

First, Sanders points to a presentation at Northern Arizona University during which an unnamed Phoenix Police officer commented that Sanders is "an example of why cultural diversity" had failed in the workplace. (Dkt. # 111 at 12.) Sanders, however, presents no admissible evidence of this alleged statement. According to Sanders, Sergeant Robert Jones told her about the comment in July 2004. Thus, this comment is double hearsay, and Sanders fails to point to any exception to the hearsay rule that would make the statement admissible *See* Fed. R. Evid. 801(c); *see also Courtney v. Canyon Television & Appliance Rental, Inc.*, 899 F.2d 845, 851 (9th Cir. 1990) (observing that a party cannot rely on hearsay to defeat summary judgment). Yet, even if this statement were admissible, there is no evidence that indicates when this comment was made and there is nothing in the record suggesting that Phoenix Police sanctioned or encouraged this comment.

Second, Sanders points to an October 24, 2004 discrimination complaint that Freund filed against her. (Dkt. # 111 at 12.) Sanders, however, fails to explain how this complaint is related to her claim that she suffered a hostile work environment due to her Hispanic supervisors' failure to take prompt action against Pinuelas. Moreover, Phoenix Police's failure to prevent Sanders's subordinates from pursuing discrimination complaints does not constitute evidence that Sanders was subjected to a hostile work environment. Phoenix Police was required by law to provide its employees with a process for raising discrimination claims. There is no evidence that Phoenix Police abused this process by permitting Freund to go forward with her October 24, 2004 discrimination complaint. Accordingly, the Court finds that Sanders has failed to carry her burden of showing that Freund's complaint was part of a continuing pattern of discrimination that makes her hostile work environment claim timely.

**III. Sanders Has Not Presented Evidence of a Policy or Custom to Prevail on her § 1981 Claim.**

Under § 1981, liability cannot be premised on a respondeat superior theory. *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1214–15 (9th Cir. 1996). Instead, as with claims under 42 U.S.C. § 1983, a defendant may be held liable for § 1981 claims only

- 9 -

1 | if the plaintiff alleges and proves that her injury resulted from a municipal policy, practice, or custom. *Id.*; *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). To determine whether there is a particular custom or practice, the critical inquiry is whether it is "so well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice." *See Bordanaro v. McLeod*, 871 F.2d 1151, 1156 (1st Cir. 1989).

Sanders has failed to present evidence of a "well settled and widespread" policy, custom, or practice of racial discrimination or animus by the policy makers at Phoenix Police. *See id.* As discussed above, Sanders has not presented evidence that the allegedly hostile conduct of her supervisors and subordinates was premised on race. Having failed to demonstrate that the alleged hostile work environment was based on her race, Sanders cannot establish that her fellow officers' alleged misconduct occurred pursuant to some policy, custom, or practice of racial animus. Additionally, while Sanders points to affidavits from two former Phoenix Police officers, Michael Carribon and Yolanda Mathews, who allege that officials at Phoenix Police allowed a racially hostile environment to prevail, these affidavits are insufficient to defeat summary judgment. (Dkt. # 111 at ¶ 71.) According to Carribon and Mathews, some unnamed officials employed by Phoenix Police failed to intervene when subordinates brought allegedly false discrimination complaints against African Americans. (*Id.*) The Court finds, however, that Phoenix Police's failure to prevent its employees from pursuing discrimination complaints does not constitute evidence of a hostile work environment. There is nothing in the record demonstrating that these unnamed officials encouraged or directed employees to bring meritless complaints or that Phoenix Police refused to take action against officers that filed patently frivolous complaints. Similarly, even assuming these unnamed officers did engage in some kind of misconduct, there is no evidence that suggests they were acting pursuant to some widespread department policy, custom, or practice. *See Fed'n of African Am. Contractors*, 96 F.3d at 1214–15.

///

///

**CONCLUSION**

Having determined that Sanders fails to establish a prima facie hostile work environment claim under Title VII and § 1983,

**IT IS THEREFORE ORDERED** that the City of Phoenix's Motion for Summary Judgment (Dkt. # 96) is **GRANTED**.

**IT IS FURTHER ORDERED** directing the Clerk of the Court **TERMINATE** this action.

DATED this 30th day of March, 2010.

*[signature]*
G. Murray Snow
United States District Judge